IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BYRON TODD,

       Plaintiff,

v.                                                                                    Civ. No. 10-0106 JB/KBM

TOMAS MONTOYA, RON TORRES,
Director of the Metropolitan Detention
Center, and THE BOARD OF COUNTY
COMMISSIONERS OF BERNALILLO
COUNTY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Reconsider Denial of Defendants' Motion for Summary Judgment & Supplemental Briefing on the Issue of Dismissing this Case or Disqualifying Plaintiff's Counsel, filed January 28, 2011 (Doc. 45) ("Motion to Reconsider").[1] The Court held a hearing on March 3, 2011. The principal issue on reconsideration is whether the Court erred as a matter of fact and of law in its initial holding that it would neither dismiss the case nor disqualify Plaintiff's counsel. After careful reconsideration of its earlier MOO and the grounds that the Defendants raise for reconsideration, the Court continues to believe its decision in the MOO is the correct one, and thus the Court will deny the request to change its prior decision.

## FACTUAL BACKGROUND

Plaintiff Byron Todd brings his case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-30, alleging various constitutional deprivations

---

[1] The "supplemental briefing" referred to is the briefing in support of, and in opposition to, the Defendants' Motion to Reconsider. See Doc. 45 at 1.

while he was incarcerated at the Metropolitan Detention Center ("MDC").   Before filing his

Complaint for Civil Rights Violations, Tort Claims, and Damages ("Complaint"), Todd's counsel,

Ryan J. Villa, and his investigator, Gary Ainsworth, interviewed Defendant Tomas Montoya ("T.

Montoya") about the events which form the basis of the lawsuit.   Briefly stated, in 2008, Todd was

incarcerated at MDC where T. Montoya was employed as a guard in the Pod where Todd was being

held.   Todd and T. Montoya got into an argument, and Todd alleges that, in retaliation, T. Montoya

allowed two other inmates to view the computer screen listing Todd's offenses.   He alleges that he

was beaten by two other inmates once they determined the nature of the charges against him.   See

Complaint, ¶¶ 9-36.

## PROCEDURAL BACKGROUND

On March 26, 2010, the Defendants filed a Joint Motion for Summary Judgment or in the

Alternative Motion to Disqualify Legal Counsel.   See Doc. 16 ("Joint Motion").   The Court held a

hearing on this Joint Motion on November 4, 2010, and issued its Memorandum Opinion and Order

on January 12, 2011 denying the Joint Motion.   See Doc. 39 ("MOO").   The Court then entered its

order lifting the stay of discovery, see Memorandum Opinion and Order, filed January 18, 2011

(Doc. 41)("Jan. 18, 2011 MOO").

The parties reminded the Court that it had promised the parties, after taking evidence at the

November 4, 2010 hearing on the Joint Motion, that it would reconvene the hearing on the Joint

Motion for closing arguments; the Court forgot to resume the hearing, finished the MOO on which

it had been working, and issued the opinion.   The Court therefore advised the parties it would set

a hearing to resume the legal arguments if the Defendants wanted to file a motion to reconsider.

See Jan. 18, 2011 MOO at 7 n.2.   The Defendants then filed their Motion to Reconsider, and the

Court held a hearing on March 3, 2011.

## ANALYSIS

Reconsideration is a matter of the court's discretion and is appropriate when the court has made an error of fact or of law.  See Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  The Defendants provide four grounds for reconsideration: (i) Plaintiff's counsel's failure to disclose and provide copies of the tape recorded conversations between Ainsworth and Defendant T. Montoya, which allegedly impacted on the Court' credibility determinations; (ii) Defendants' belief that the Court should revisit its determination regarding case law holdings, because none of the cases relied upon involved parties to a case; (iii) Ainsworth's and Villa's inconsistent statements between their affidavits and testimony at the hearing; and (iv) Villa's testimony that he had all facts necessary for his lawsuit and therefore had no reason to engage in *ex parte* communications with a prospective defendant except for an improper purpose.

**I.     THE COURT WILL NOT GRANT THE MOTION TO RECONSIDER BASED ON THE DEFENDANTS' ARGUMENT REGARDING THE ALLEGED FAILURE TO DISCLOSE.**

Villa was asked for the Villa interview tape, and it was provided.  Villa did not turn over the Ainsworth/Montoya tape, even though Villa knew that the Defendants' counsel would be unaware of its existence.  The Defendants argue that if they had the tape, T. Montoya could have refreshed his recollections for his affidavit and testimony, as did Villa and Ainsworth.  Defendants contend that in that event, the Court would not have credited Ainsworth and/or Villa's testimony when it differed from T. Montoya's testimony.[2]

The recorded conversation between Ainsworth and T. Montoya primarily dealt with Ainsworth's attempt to set up a meeting with T. Montoya to talk about the circumstances of the 2008

---

[2] As more fully explained in Part III, *infra*, this argument is unpersuasive because Ainsworth and Villa had both tape recordings, and yet their testimony contained inaccuracies.

incident at MDC.  T. Montoya told Ainsworth he had no recollection of the events.  See MOO ¶ 21, at 6.  Ainsworth read, in part, the New Mexico Tort Claims to T. Montoya, who did not understand what the statute said.  See MOO ¶¶ 15-16, at 5.  Ainsworth told T. Montoya he could get a lawyer to advise him what the statute meant, but that Ainsworth himself was not a lawyer and could not give T. Montoya any legal advice.  See MOO ¶¶ 10-18, at 3-5.

The Court's MOO listed seven instances where T. Montoya's testimony differed from Ainsworth's or Villa's.  In paragraph 20, the Court found that "[a]t no time did Ainsworth ever represent or suggest that T. Montoya's statement was mandatory or that adverse consequences would result if he did not give a statement."  In footnote 2 to that paragraph, the Court noted that T. Montoya had testified at the hearing and in his affidavit that Ainsworth told him he "had" to give a statement; upon listening to the recording, T. Montoya conceded his recollection was incorrect.  See MOO at 6 n.2.

Paragraph 20 and footnote 2 were the only instances concerning the T. Montoya/Ainsworth tape recording.  The remaining instances -- paragraphs 38, 40, 41, 42, 43, and 48 and corresponding footnotes 3 through 8 -- all concerned events occurring on the tape recording at Villa's office or events occurring before or after the tape recording.  To the extent that counsel is arguing that, because T. Montoya's recollection was inaccurate with regard to the first tape recording, the Court chose not to believe him in the other instances, that supposition is incorrect.  The Court listed its reasons for finding as it did in the referenced footnotes, and these conclusions were based on hearing and viewing the testifying witnesses at the hearing.  That reasoning stands.  Production of the Ainsworth recording before to the hearing would not have changed the outcome.

## II.    THE COURT DID NOT MISAPPREHEND THE CONTROLLING LAW.

The Defendants argue that, because none of the cases upon which the Court relied in its

MOO dealt with *ex parte* conversations with a party to the case, its legal ruling was incorrect.  The Court adequately explained its legal analysis and why certain cases were unpersuasive.  It might be noted there is a dearth of caselaw on the subject, and neither the Defendants nor the Court have found any cases directly on point.  The most analogous case found by the Court concerns potential class actions and defense counsel's interviews with putative class members.  See In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2008 WL 4401970 (E.D. La. Sept. 22, 2008)(unpublished decision).  In that case, the court cited other cases holding that non-coercive interviews with putative class members was not prohibited; only named class plaintiffs would be deemed represented by counsel.  See 2008 WL 4401970, *4-5 and cases cited therein.  While not directly on point, the cases reiterated this Court's holding

> that the New Mexico Rules of Professional Conduct require only that a lawyer make clear that he is not disinterested and the nature of his or her role when dealing with an unrepresented person whose interests conflict with his or her client's interests' and that a lawyer not give legal advice to the unrepresented person, other than the advice to secure counsel.

MOO at 25-26.  Nothing presented by the Defendants changes this conclusion.

## III.    THE COURT WILL NOT GRANT THE MOTION TO RECONSIDER BASED UPON AINSWORTH'S AND VILLA'S ALLEGED INCONSISTENT STATEMENTS.

The Defendants point out several inconsistencies between Ainsworth's and Villa's affidavits, and their testimony at the hearing.  As was evidenced by T. Montoya's inaccuracies between his affidavit and testimony, an individual's perceptions of past events may be slightly, moderately, or grossly inaccurate.  The Court has reviewed the Defendants' examples of inconsistent statements and does not find them persuasive.  For example, Villa testified at the hearing that he believed T. Montoya asked about a lawyer before  the beginning of the interview and that Villa suggested that T. Montoya call County Legal.  This contradicts Villa's affidavit, in which he states unequivocally

that "[a]t no point prior to starting the interview did Mr. Montoya ask if he need[ed] to consult a lawyer prior to giving the interview."  Response at 16.  The statements are certainly inconsistent, but as the Court found in paragraph 42 of its findings:

> [B]oth Ainsworth and Mr. Villa told T. Montoya to seek advice from his own attorney before T. Montoya gave his statement.  See Transcript of Telephone Call at 5:23-25; Tr. at 104:13-15 (Johnson, Villa); id. at 105:22-25 (Villa) (stating that he informed T. Montoya that he could not give him any advice except the advice to get his own attorney); Ainsworth Aff. ¶¶ 14, 24, at 3, 4; Villa Aff. ¶ 12, at 8.

Nothing submitted by the Defendants contradicts these findings:  T. Montoya was advised to seek counsel, and neither Villa nor Ainsworth gave T. Montoya legal advice.

The Court also found that "[n]either Ainsworth nor Mr. Villa told T. Montoya that he did not need an attorney."  MOO ¶ 41, at 9.  The Defendants make much of the interchange between T. Montoya and Villa, in which the former asked near the end of the interview whether he needed a lawyer and Villa responded, "No, not right now," and then turned off the tape recorder.  MOO ¶ 51, at 11.  The Court can think of several interpretations of Villa's statement, none of which have the diabolical overtones that the Defendants suggest.

First, T. Montoya's statement was: "I guess, like you said, I have to go get a lawyer now?" MOO ¶ 50, at 11 (emphasis added).  This statement supports the Court's finding that Villa had previously mentioned the need for T. Montoya to seek legal advice.  Villa's "[n]o, not right now" statement could mean "not at this precise moment," "not until you speak with County Legal," or "it is customary to wait until you are served with a summons and complaint before retaining counsel." Villa may have wanted to explain any or all of those scenarios off the record, which is consistent with the recordings and the testimony at the hearing.  Villa, in fact, provided T. Montoya with County Legal's telephone number.  See MOO ¶ 53, at 12.

The Defendants suggest that T. Montoya's pre-interview state of mind colored his interview,

-6-

and the facts he relayed to Villa and Ainsworth.  They cite as an example of this slanting the supposed intimidating atmosphere in Villa's office, where T. Montoya -- who sat beside Ainsworth while Villa sat behind a desk -- felt "trapped."  Motion to Reconsider at 15.

The testimony at the hearing and the individuals' affidavits conflict to some but not a great degree.  Villa recalls gesturing to the two chairs in front of his desk and asking T. Montoya to sit.  Montoya recalls being told where to sit.  See MOO ¶ 38, at 9; id. at 9, n.3.  T. Montoya may have felt trapped by being in an unfamiliar situation, but there is nothing in the record to suggest intimidation.  As the Court noted in its MOO: "At the time of the events in question, T. Montoya was twenty years old and was concerned whether he would be in trouble if he did not give a statement.  These circumstances may have affected some of T. Montoya's recollections of the events."  MOO at 3 n.1.  For example, Ainsworth first contacted T. Montoya's father, Vincent Montoya, and asked him to have T. Montoya call him.  See MOO at ¶ 3, at 2.  T. Montoya called Ainsworth, and Ainsworth advised T. Montoya to consult a lawyer in their initial telephone conversation.  MOO ¶ 18, at 5.  T. Montoya did not call a lawyer, but consulted with his father who advised him to give a statement so that he would not get into trouble.  See MOO ¶¶ 23-25, at 6-7.

The foregoing indicates a young man who found himself in unfamiliar territory and was unsure of what exactly was expected of him.  Both he and his father were under the mistaken impression that T. Montoya could get into trouble if he did not make a statement.  The Court recognizes the inconsistencies, inaccuracies, and nuanced interpretations of the incomplete recollections of the individuals involved.  The fact remains, however, that the Court has observed these individuals while testifying and has read the parties' submissions, and has had to make its determination based on all of these factors.  Villa and Ainsworth, by training and experience, are aware of their ethical duties and responsibilities in conducting their interviews; T. Montoya was

under some degree of stress in unfamiliar territory, both in the interviews and at the hearing.

The Court determined that Villa and Ainsworth met their professional responsibilities, and nothing submitted since then persuades the Court its initial findings were incorrect.

## IV.   THE COURT WILL NOT GRANT THE MOTION TO RECONSIDER BASED UPON THE DEFENDANTS ARGUMENTS REGARDING AN IMPROPER *EX PARTE* INTERVIEW.

Finally, the Defendants argue that, because Villa stated he had all of the facts necessary for his Complaint, it was unnecessary to interview T. Montoya.   As the Court understands the Defendants' argument, they believe trickery was involved because T. Montoya was not told he was going to be sued along with The Board of County Commissioners of Bernalillo County, and Defendants' counsel was trying to elicit damaging information before T. Montoya obtained his own counsel.   The Defendants argue that, unless the Court excludes T. Montoya's testimony, manifest injustice will result.

The Defendants do not show how T. Montoya's testimony would differ as to the facts regarding the incident at issue, other than being less forthcoming.   Because the Court has not found any breach of professional responsibility surrounding the interviews of T. Montoya, neither does it find the fact of the interview violated the rules of professional conduct.

Based on the Court's determination that the Defendants have, at this stage, not shown that T. Montoya's factual testimony at trial will be different from his pre-trial statements, the Court does not see a sound reason why it should dismiss T. Montoya as a party or why it should strike his testimony as a matter of equity.   There is no suggestion that Villa or Ainsworth elicited any improper information.   T. Montoya's testimony may prejudice Defendants' case, but that is not the same as manifest injustice either to himself or to the other Defendants.

**IT IS ORDERED** that Defendants' Motion to Reconsider Denial of Defendants' Motion for

Summary Judgment & Supplemental Briefing on the issue of Dismissing This Case on Disqualifying

Plaintiff's Counsel, filed January 28, 2011 (Doc. 45), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan J. Villa
The Law Office of Robert R. Cooper
Albuquerque, New Mexico

-- and --

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

   *Attorneys for Plaintiff*

Carlos M. Quinones
Quinones Law Firm
Santa Fe, New Mexico

   *Attorneys for Defendant Tomas Montoya*

Jeffrey L. Baker
Renni Zifferblatt
The Baker Law Firm
Albuquerque, New Mexico

   *Attorneys for Defendants Ron Torres and Board of County Commissioners of Bernalillo*
   *County*