IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BYRON TODD,

     Plaintiff,

v.                                                                                    No. CIV 10-0106 JB/KBM

TOMAS MONTOYA, RON TORRES,
Director of the Metropolitan Detention
Center, and THE BOARD OF COUNTY
COMMISSIONERS OF BERNALILLO
COUNTY,

     Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) Defendant Tomas Montoya's Motion for Summary Judgment Based Upon Qualified Immunity and Other Grounds, and Supporting Memorandum, filed April 13, 2011 (Doc. 61)("Motion for Summary Judgment"); (ii) Defendant Tomas Montoya's Motion to Stay Discovery Pending Determination of His Motion for Summary Judgment on Basis of Qualified Immunity and Other Grounds, filed April 13, 2011 (Doc. 62)("Apr. 13, 2011 Motion to Stay Discovery"); and (iii) Defendants County and Torres' Motion to Stay Discovery Pending Resolution of Defendant Tomas Montoya's Qualified Immunity Summary Judgment Motion, filed May 5, 2011 (Doc. 65)("May 5, 2011 Motion to Stay Discovery"). The Court held a hearing on August 19, 2011. The primary issue is whether the Court should allow discovery before ruling on Montoya's summary judgment motion. Consistent with the Court's finding at the hearing, and the parties' agreement, the Court will grant the motions to stay in part and deny them in part, allow limited discovery, and hold the pending motion for summary judgment

in abeyance until the discovery is complete.  More specifically, the Court will allow Plaintiff Byron Todd to take Patrick Wilks' deposition.

## FACTUAL BACKGROUND

Plaintiff Byron Todd brings his case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, N.M.S.A. §§ 41-4-1 to 41-4-30, alleging various constitutional deprivations while he was incarcerated at the Metropolitan Detention Center ("MDC").  In 2008, Todd was incarcerated at MDC where Defendant Tomas Montoya worked as a guard in the Pod -- a group of modular cells -- where Todd was being held.  See Complaint for Civil Rights Violations, Tort Claims and Damages ¶¶ 9-11, at 3, filed February 8, 2010 (Doc. 2-1)("Complaint").  Todd and Montoya got into an argument, and Todd alleges that, in retaliation, Montoya allowed other inmates to view the computer screen listing Todd's offenses.  See Complaint ¶¶ 15-26, at 3-4.  He alleges that inmates Wilks and Joseph Armijo beat him once they determined the nature of the charges against him.  See Complaint ¶¶ 30-36, at 5.  Prior to this incident, Todd was charged with some sex offenses and is registered as a sex offender.  See Response to Defendant Tomas Montoya's Motion for Summary Judgment Based Upon Qualified Immunity and Other Grounds, and Supporting Memorandum at 1, 12, 13, filed May 23, 2011 (Doc. 67)("Response to MSJ").

## PROCEDURAL BACKGROUND

On April 13, 2011,  Montoya filed his Motion for Summary Judgment and his Apr. 13, 2011 Motion to Stay Discovery.  On May 5, 2011, Defendant Board of County Commissioners of Bernalillo County filed its May 5, 2011 Motion to Stay Discovery.  Todd has responded to all three motions.  See Response to MSJ; Response to Defendant Tomas Montoya's Motion to Stay Discovery Pending Determination of His Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds, filed May 23, 2011 (Doc. 68); and Response to Defendants Bernalillo

County and Ron Torres's Motion  for Stay of Discovery Pending Resolution of Defendant Tomas Montoya's Qualified Immunity Summary Judgment Motion, filed May 23, 2011 (Doc. 69).

In support of his motion for summary judgment, Montoya  stated in his affidavit that Wilks had asked Montoya if Todd was a child molester and that Montoya said he did not know.  See Affidavit of Defendant Tomas Montoya ¶¶ 21-23, at 3 (Doc. 61-1)("Montoya Aff.").  Although Wilks allegedly attempted to view the computer screen Montoya was accessing to determine Todd's criminal history, Montoya stated it would have been impossible for Wilks to see the screen from his vantage point.  See Montoya Aff.  ¶¶ 26-29, at 4.  Montoya also stated that he had not yet accessed the information regarding Todd's criminal or legal history at that time.  See Montoya Aff. ¶ 30, at 4.  Montoya further stated that at no time did he communicate to Wilks any information about Todd's criminal or legal history.  See Montoya Aff. ¶ 31, at 4.  Montoya avers that after Wilks left the computer station, Wilks and Todd got into a fight, and then another inmate named Joseph Armijo came forward and kicked Todd in the head.  See Montoya Aff.  ¶¶ 35-36, at 5.  Montoya states Armijo was never near the computer station, and "[a]t no time did I communicate to Mr. Armijo any information about Mr. Todd's criminal or legal history."  Montoya Aff. ¶¶ 37-38, at 5.

In Todd's Response to MSJ, Todd submitted  his affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.[1]  See Plaintiff's Rule 56(f) Affidavit (Doc. 67-1)("Todd Aff.").  Todd's affidavit states that he needs discovery to refute the facts in Montoya's affidavit.  See Todd Aff. ¶¶ 8-15, at 2-4.

Todd also attached the affidavit of Gary Ainsworth, a private investigator whom Todd's attorneys have hired, to his Response to MSJ.  See Affidavit of Gary Ainsworth (dated May 23,

---

[1]The title of the document is Plaintiff's rule 56(f) Affidavit.  The 2009 amendments to Rule 56 changed the subdivision from (f) to (d) with no substantive changes.

2011), filed May 23, 2011 (Doc. 67-5.)("Ainsworth Aff."). Ainsworth states in his affidavit that he contacted Wilks on September 21, 2009. See Ainsworth Aff. ¶ 5, at 1. Ainsworth states that Wilks said he remembered some of the incident, but could not remember the name of the correctional officer involved. See Ainsworth Aff. ¶ 7, at 1. Ainsworth states that Wilks told him that this correctional officer instructed him to attack Todd. See Ainsworth Aff. ¶ 8, at 1.

The Court held a hearing on these motions on August 19, 2011. At the hearing, Montoya's attorney, Mr. Carlos M. Quinones, noted that Wilks' testimony "does appear to be a focal point for plaintiff's claims." Transcript of Hearing at 5:21-22 (taken August 19, 2011)("Tr.")(Quinones).[2] Mr. Quinones then stated that if Mr. Wilks testifies he never received any information on Todd's charges or criminal history from Montoya, then this case should be dismissed either voluntarily or by the Court. See Tr. at 5:22-25 (Quinones). Mr Quinones asserted that if, on the other hand, Mr. Wilks testifies that Mr. Montoya informed him or showed him anything about Todd's past criminal charges, then this case can go forward. See Tr. at 6:1-4 (Quinones). Todd's counsel agreed with the Court that he needed to refute Montoya's affidavit to create an issue of fact so that the case could proceed. See Tr. at 10:15-11:2 (Court, Villa). That is, he needed to have some evidence that Montoya communicated in some way to Wilks -- either via the computer screen or orally -- that Todd should be beaten. Tr. at 10:15-11:5 (Court, Villa).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. Civ. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 129 S.Ct. 808, 815 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 818).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged that: (i) the defendant's actions violated his or her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In determining whether the plaintiff has met his or her burden, the court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983).

-5-

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)). See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). On the other hand, the Supreme Court of the United States has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense. In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." 129 S. Ct. at 821. The Supreme Court also noted in Pearson v. Callahan that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial. See 129 S. Ct. at 821. Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified-immunity defense generally fails. See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court has suggested that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered. See Crawford-El v. Britton 523 U.S. 574, 598

-6-

(1998). There are, however, exceptions to the rule that no discovery be allowed when government officials claim qualified immunity. The officials are not protected from all discovery, "'but only from discovery which is either avoidable or overly broad.'" Garrett v. C.A. Stratman, M.D., 254 F.3d 946, 953 (10th Cir. 2001)(quoting Maxey v. Fulton, 890 F.2d 279, 282 (10th Cir. 1989)).

## ANALYSIS

The Court will deny the motions to stay in part, allow limited discovery, and hold the motion for summary judgment in abeyance. At the August 19, 2011 hearing, the parties agreed that the viability of Todd's case turned on inmate Wilks' sworn testimony. See Tr. at 8:11-15, 9:13-19, 10:15-25, 11:1-5. Todd argues that Montoya either allowed Wilks and Armijo to view the computer screen showing the charges against Todd, or that Montoya orally conveyed to Wilks and Armijo the nature of the charges against Todd, thus inciting the beating.

It is axiomatic that "Rule 56(f) is not a license for a fishing expedition, especially when summary judgment is urged based on a claim of qualified immunity." Lewis v. City of Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990). This Court has previously denied requests for additional discovery when a plaintiff merely wants to "flesh out" the merits of a case or to create a factual dispute. B.T. v. Davis, 557 F.Supp. 2d 1262, 1286-87 (D.N.M. 2007)(Browning, J.). In this case, however, the factual disputes are real and apparent, and summary judgment will turn on the determination of whether a factual dispute exists.

The reports of the 2008 incident are conflicting. For example, in an interview with Tomas Montoya, Montoya stated that he did not show the computer screen to inmate Wilks and that, even though Wilks jumped up on the computer station, he could not have seen anything on the computer screen. See Interview with Tomas Montoya at 2, filed May 23, 2011 (Doc. 67-2). The handwritten statement of inmate Wilks states: "I found out his charges by [sic] a CO [Correction Officer]

Montoya[.] I saw them on the computer." Voluntary Statement at 1 (dated January 15, 2008), filed

May 23, 2011 (Doc. 67-3).

      Gary Ainsworth, an investigator that Todd's attorney employed, submitted an affidavit about

the interview he conducted with inmate Wilks. Ainsworth avers that Wilks told him that "he was

instructed by [an unknown] correctional officer to attack Byron Todd." See Ainsworth Aff. ¶ 8, at

1. Finally, in an MDC internal memorandum concerning the incident, Sgt. Christopher Sanchez

states:

> Inmate Armijo denied having anything to do with the fight, he asked to see the tape
> showing him kicking inmate Todd. I advised inmate Armijo that he would have the
> chance to talk to the disciplinary committee. Inmate Wilks did not want to speak
> about the fight.
>
> . . .
>
> After reviewing the tape I noticed inmate Armijo come from behind inmate Lynam
> and kick inmate Todd in the head while he was on the ground.
>
> . . .
>
> When asked if inmate Wilks and Armijo would like to make a statement they
> refused.

See MDC Memorandum at 1-2 (dated January 13, 2008), filed May 23, 2011 (Doc 67-6).

      Todd has shown, as best he can without using the Court's subpoena power, that there may

be evidence to keep his case alive if he is allowed to take Wilks' deposition. While his

investigator's statements concerning his interview with Wilks are inadmissible hearsay, they give

the Court some comfort that there may be admissible evidence if the Court allows Wilks' deposition.

After discussing the conflicting testimony at the August 19, 2001 hearing, Ron Torres and the Board

of County Commissioners of Bernalillo County's attorney, Mr. Jeffrey Baker, stated that he had no

"objection if discovery is limited to the deposition of Mr. Wilks." Tr. 9:1-2 (Torres). Counsel for

Plaintiff conceded that if he cannot dispute Montoya's testimony, "we don't have a case." Tr. 11:3-5 (Villa).

The Court will allow Wilks' deposition to go forward.  This testimony is possibility determinative of Todd's case, and this limited amount of discovery is narrowly crafted to get to the heart of the motion for summary judgment without allowing a lot of potentially unnecessary discovery.  Montoya has said he did not show Wilks or Armijo his computer screen, or tell them Todd's crimes; if Wilks says otherwise, there will likely be a genuine issue of fact requiring the Court to deny the motions and allow the parties to proceed to trial.  It seems fundamentally unfair to dismiss Todd's case when a deposition of Wilks may make his case.  Further, this deposition will not burden any government employees or entities.  Accordingly, the Court finds that this limited discovery falls within the exceptions to disallowing discovery once the defense of qualified immunity has been raised. See Garrett v. C.A. Stratmen, M.D., 254 F.3d  at 953 (recognizing that a discovery order in the context of qualified immunity is not immediately appealable "when the defendant's immunity claim turns at least partially on a factual question; when the district court is unable to rule on the immunity defense without further clarification of the facts; and which are narrowly tailored to uncover only those facts needed to rule on the immunity claim are neither avoidable or overly broad.").  The Court does not believe this one deposition defeats the important purposes of qualified immunity that recognize the need for barring most, if not all, discovery when the defendant raise the defense.  The Court may also allow Armijo's deposition to be taken, depending upon Wilks' testimony.  See  Tr. at 14:17-25 (Court).  The Court will not authorize Armijo's deposition at this time.  If Wilks does not give Todd what he needs and wants to defeat summary judgment, however, the parties are advised that the Court will be strongly inclined to allow

Todd to take Armijo's deposition; perhaps this inclination will help the parties as they discuss whether to allow Armijo's deposition after assessing Wilks' deposition.

**IT IS ORDERED** that: (i) Defendant Montoya's Motion to Stay Discovery Pending Determination of His Motion for Summary Judgment on the Basis of Qualified Immunity (Doc. 62) is granted in part and denied in part; (ii)  that the Board of County Commissioners of Bernalillo County Motion to Stay Discovery (Doc. 65) is granted in part and denied in part; (iii) Plaintiff may take the deposition of inmate Patrick Wilks; and (iv) Defendant Montoya's Motion for Summary Judgment Based on Qualified Immunity (Doc. 61)  is held in abeyance; and (v) all other discovery is denied at this time.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

  and

Ryan J. Villa
The Law Office of Robert R. Cooper
Albuquerque, New Mexico

  *Attorneys for Plaintiff*

Carlos M. Quinones
Quinones Law Firm
Santa Fe, New Mexico

  *Attorneys for Defendant Tomas Montoya*

Jeffrey L. Baker

Renni Zifferblatt
The Baker Law Firm
Albuquerque, New Mexico

*Attorneys for Defendants Ron Torres and Board of County Commissioners
of Bernalillo County*